Maurice VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
(301) 444-4600
mac@mbvesq.com
*Special Counsel for Wendell Webster in*
*His Official Capacity as Chapter 7 Trustee*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 23-378-ELG |
| | ) | |
| BROUGHTON CONSTRUCTION | ) | (Chapter 7) |
| CO., LLC | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| WENDELL WEBSTER, in his official | ) | |
| capacity as chapter 7 trustee and as assignee | ) | Adv. Case No. _____ |
| of Industrial Bank and Nationwide | ) | |
| Mutual Insurance Company | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CLOUDFUND LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## **COMPLAINT**

Comes now Wendell Webster in his official capacity as chapter 7 trustee (the "Trustee") of the estate of Broughton Construction Co., LLC ("Broughton" or the "Debtor"), inclusive of his standing as assignee of Industrial Bank ("Industrial") and Nationwide Mutual Insurance Company ("Nationwide") pursuant to that certain agreement of November 10, 2025, by and through undersigned special counsel, pursuant to Federal Rule of Bankruptcy Procedure 7003 and Federal

1

Rule of Civil Procedure 3, and as and for his complaint against Cloudfund LLC ("Cloudfund" or the "Defendant") states as follows:

## Introduction

1. In the two years immediately preceding the filing of a petition for bankruptcy relief, the Debtor paid $1,039,762.00 to the Defendant, pursuant to a series of merchant cash advance ("MCA") transactions.

2. The MCA transactions are each titularly sales of future receivables, in exchange for upfront cash.

3. If the MCA transactions are, in fact, actual sales of future receivables, each such transaction (and every payment made thereupon) is a constructively fraudulent conveyance, being a sale made at the time the Debtor was insolvent, with Broughton receiving well less than reasonably equivalent value for the receivables putatively sold.

4. If the MCA transactions are not, in fact, actual sales of future receivables, each such transaction is a poorly-disguised usurious loan that, pursuant to New York law (which governs the transaction, per the Defendant's own agreement), is both criminal in nature and wholly invalid.

5. Under either eventuality, each payment made to the Defendant, by the Debtor, constitutes a fraudulent conveyance and is thusly avoidable under both Title 11 of the United States Code (the "Bankruptcy Code") and District of Columbia law.

6. The Trustee thusly now brings suit to avoid $1,039,762.00 in fraudulent conveyances, seeking a money judgment as against the Defendant in the same sum.

## Parties

7. The Trustee is the chapter 7 trustee overseeing administration of the Debtor's estate. Pursuant to an agreement of November 10, 2025, as approved by the United States Bankruptcy

Court for the District of Columbia on December 8, 2025, the Trustee is also the assignee of certain causes of action held by Industrial and Nationwide, against Cloudfund,

8. The Debtor is a limited liability company, formed pursuant to the laws of the District of Columbia on or about September 11, 2006, that filed a petition for chapter 7 relief, pursuant to Section 301 of the Bankruptcy Code, on or about December 15, 2023.

9. Cloudfund is a limited liability company, formed pursuant to the laws of the State of New York on or about April 22, 2021, carrying on the business of entering into MCA agreements.

## Jurisdiction and Venue

10. This Honorable Court enjoys jurisdiction over the instant proceeding pursuant to the allowances of Section 1334 of Title 28 of the United States Code, insofar as the causes of action set forth herein arise under Title 11 of the United States Code (the "Bankruptcy Code").

11. This Honorable Court further enjoys jurisdiction over the instant proceeding pursuant to the allowances of Section 1332 of Title 28 of the United States Code, insofar as this case is between citizens of different states and the amount in controversy exceeds Seventy Five Thousand Dollars and No Cents ($75,000.00).

12. Venue is properly laid in this Honorable Court pursuant to the allowances of Section 1409 of Title 28 of the United States Code insofar as the chapter 7 case of the Debtor is pending in this Honorable Court.

13. To whatever extent this case may be brought in the United States District Court for the District of Columbia, on account of there existing diversity jurisdiction *sub judice*, this case is nonetheless properly referred to this Honorable Court pursuant to the allowances of DCt.LBR 5011-1(a).

**General Allegations**

14. On February 25, 2022, the Debtor and the Defendant entered into a Future Receipts Sale and Purchase Agreement (the "February 2022 Agreement"), whereby the Debtor sold to the Defendant the sum of $282,000.00 in future receivables and the Defendant paid the Debtor the sum of $200,000.00 (less a "due diligence fee" of $1,901.00 and a "UCC fee" of $99.00).

15. Pursuant to the February 2022 Agreement, the Defendant was given a *carte blanche* assignment of 25% of *all* the Debtor's future receivables, to be debited at the rate of $17,265.00 per calendar week, with said remittances to continue until such a time as the full sum of $282,000.00 was paid.

16. The February 2022 Agreement is governed by the laws of the State of New York.

17. If the February 2022 Agreement were a loan, the same would call for repayment of all principal plus interest of 41%, with said repayment coming over the course of 119 days and, ergo, inviting an annualized interest rate of 125.76%.

18. The Debtor and the Defendant entered into a subsequent agreement on August 30, 2022 (the "August 2022 Agreement"), in substantially the same form as the February 2022 Agreement, pursuant to which the Debtor sold to the Defendant the sum of $840,000.00 in future receivables and the Defendant paid the Debtor the sum of $600,000.00 (less a "due diligence fee" of $6,000.00—because the cost of due diligence apparently increase multi-fold in a few short months—and a hold back of $239,046.00, which was applied to retirement of the Debtor's remaining obligations under the February 2022 Agreement).

19. Pursuant to the August 2022 Agreement, the Defendant was given a *carte blanche* assignment of 22% of *all* the Debtor's future receivables, to be debited at the rate of $28,000.00

per calendar week, with said remittances to continue until such a time as the full sum of $840,000.00 was paid.

20. If the August 2022 Agreement were a loan, the same would call for repayment of all principal plus interest of 40%, with such repayment coming over the course of 154 days and, ergo, inviting an annualized interest rate of 94.81%.

21. A third agreement was then entered into in October 2022 (the "October 22 Agreement"), with the Debtor this time selling $1,680,000.00 in future receivables, in exchange for a purchase price of $1,200,000.00, to be repaid through weekly remittances of $48,000.00 that were designed to represent 11% of the Debtor's future receivables.

22. The October 2022 Agreement only resulted a disbursement of $550,933.00 to the Debtor, with a "due diligence fee" of $12,000.00 being withheld (because somehow the already-multiplied cost of due diligence found a way to still double) and some $637,067.00 of monies being withheld to retire the Debtor's obligations under the August 2022 Agreement.

23. If the October 2022 Agreement were a loan, the same would call for repayment of all principal plus interest of 40%, with such repayment coming over the course of 154 days and, ergo, inviting an annualized interest rate of 94.81% (with the interest numbers and days-until-retirement being identical to the August 2022 Agreement).

24. On June 9, 2023, the Defendant brought suit in the Supreme Court of New York, sitting in Nassau County, against, *inter alia*, the Debtor, for breach of the October 2022 Agreement, therein alleging the sum of $886,125.00 to be due and owing (together with prejudgment interest) and attaching a payment history evidencing $798,875.00 in payments to have been made to the Defendant, by the Debtor, under the October 2022 Agreement (in *addition* to the $637,067.00 withheld at closing for satisfaction of obligations under a prior agreement).

25. Based on the language of the October 2022 Agreement, it appears the Debtor paid $202,933.00, to the Defendant, pursuant to the August 2022 Agreement, before the residue of the balance thereupon was retired pursuant to the October 2022 Agreement.

26. Based on the language of the August 2022 Agreement, it appears the Debtor paid $42,954.00, to the Defendant, pursuant to the February 2022 Agreement, before the residue of the balance thereupon was retired pursuant to the August 2022 Agreement.

27. In total, the Debtor remitted $1,039,762.00, to the Defendant, pursuant to the three agreements, *in addition to* the debts putatively paid off with monies withheld at the times the August 2022 Agreement and the October 2022 Agreement were funded.

### Count I: Fraudulent Conveyance – February 2022 Agreement
### (11 U.S.C. § 548)

28. The Trustee repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

29. The Debtor had financial liabilities that exceeded the Debtor's assets, on February 5, 2022, and was accordingly insolvent at the time the February 2022 Agreement was entered into.

30. The Debtor was without the ability to pay its debts, as they came due, on February 5, 2022.

31. Assuming, *arguendo*, the February 2022 Agreement was a *bona fide* sales agreement, the receipt of $200,000.00 (less $2,000.00 in fees), in exchange for the sale of $282,000.00 in future receivables, was made for markedly less than reasonably equivalent value.

32. Between February 5, 2022 and August 30, 2022, the Debtor paid the Defendant $42,954.00 pursuant to the February 2022 Agreement.

WHEREFORE, the Trustee respectfully prays this Honorable Court (i) avoid the February 2022 Agreement, as well as all payments made thereunder, pursuant to the allowances of Section

548(a)(1)(B) of Title 11 of the United States Code; (ii) enter judgment in favor of the Trustee, and against the Defendant, in the sum of $42,954.00; and (iii) afford such other and further relief as may be just and proper.

### Count II: Fraudulent Conveyance – August 2022 Agreement
### (11 U.S.C. § 548)

33. The Trustee repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

34. The Debtor had financial liabilities that exceeded the Debtor's assets, on August 30, 2022, and was accordingly insolvent at the time the August 2022 Agreement was entered into.

35. The Debtor was without the ability to pay its debts, as they came due, on August 30, 2022.

36. Assuming, *arguendo*, the August 2022 Agreement was a *bona fide* sales agreement, the receipt of $600,000.00 (less $6,000.00 in due diligence fees and $239,046.00 used to retire the Debtor's avoidable obligation under the February 2022 Agreement), in exchange for the sale of $840,000.00 in future receivables, was made for markedly less than reasonably equivalent value.

37. Between August 30, 2022 and October 21, 2022, the Debtor paid the Defendant $202,933.00 pursuant to the August 2022 Agreement.

WHEREFORE, the Trustee respectfully prays this Honorable Court (i) avoid the August 2022 Agreement, as well as all payments made thereunder, pursuant to the allowances of Section 548(a)(1)(B) of Title 11 of the United States Code; (ii) enter judgment in favor of the Trustee, and against the Defendant, in the sum of $202,933.00; and (iii) afford such other and further relief as may be just and proper.

### Count III: Fraudulent Conveyance – October 2022 Agreement
### (11 U.S.C. § 548)

38. The Trustee repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

39. The Debtor had financial liabilities that exceeded the Debtor's assets, on October 21, 2022, and was accordingly insolvent at the time the October 2022 Agreement was entered into.

40. The Debtor was without the ability to pay its debts, as they came due, on October 21, 2022.

41. Assuming, *arguendo*, the October 2022 Agreement was a *bona fide* sales agreement, the receipt of $1,200,000.00 (less $12,000.00 in due diligence fees and $637,067.00 used to retire the Debtor's avoidable obligation under the August 2022 Agreement), in exchange for the sale of $1,680,000.00 in future receivables, was made for markedly less than reasonably equivalent value.

42. Between October 21, 2022 and May 8, 2022, the Debtor paid the Defendant $793,875.00 pursuant to the October 2022 Agreement.

WHEREFORE, the Trustee respectfully prays this Honorable Court (i) avoid the October 2022 Agreement, as well as all payments made thereunder, pursuant to the allowances of Section 548(a)(1)(B) of Title 11 of the United States Code; (ii) enter judgment in favor of the Trustee, and against the Defendant, in the sum of $793,875.00; and (iii) afford such other and further relief as may be just and proper.

### Count IV: Fraudulent Conveyance – February 2022 Agreement
### (DC Code § 28-3105)

43. The Trustee repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

8

44. The Debtor had financial liabilities that exceeded the Debtor's assets, on February 5, 2022, and was accordingly insolvent at the time the February 2022 Agreement was entered into.

45. The Debtor became further insolvent as a result of entering into the February 2022 Agreement.

46. The Debtor was justly indebted to Industrial on February 5, 2022 and has remained justly indebted to Industrial at all times since (including on December 15, 2023, when the Debtor petitioned for chapter 7 relief).

47. Assuming, *arguendo*, the February 2022 Agreement was a *bona fide* sales agreement, the receipt of $200,000.00 (less $2,000.00 in fees), in exchange for the sale of $282,000.00 in future receivables, was made for markedly less than reasonably equivalent value.

48. Between February 5, 2022 and August 30, 2022, the Debtor paid the Defendant $42,954.00 pursuant to the February 2022 Agreement.

WHEREFORE, the Trustee respectfully prays this Honorable Court (i) avoid the February 2022 Agreement, as well as all payments made thereunder, pursuant to the allowances of Section 548(a)(1)(B) of Title 11 of the United States Code; (ii) enter judgment in favor of the Trustee, and against the Defendant, in the sum of $42,954.00; and (iii) afford such other and further relief as may be just and proper.

### Count V: Fraudulent Conveyance – August 2022 Agreement
### (DC Code § 28-3105)

49. The Trustee repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

50. The Debtor had financial liabilities that exceeded the Debtor's assets, on August 30, 2022, and was accordingly insolvent at the time the August 2022 Agreement was entered into.

51. The Debtor became further insolvent as a result of entering into the August 2022 Agreement.

52. The Debtor was justly indebted to Industrial on August 30, 2022 and has remained justly indebted to Industrial at all times since (including on December 15, 2023, when the Debtor petitioned for chapter 7 relief).

53. Assuming, *arguendo*, the August 2022 Agreement was a *bona fide* sales agreement, the receipt of $600,000.00 (less $6,000.00 in due diligence fees and $239,046.00 used to retire the Debtor's avoidable obligation under the February 2022 Agreement), in exchange for the sale of $840,000.00 in future receivables, was made for markedly less than reasonably equivalent value.

54. Between August 30, 2022 and October 21, 2022, the Debtor paid the Defendant $202,933.00 pursuant to the August 2022 Agreement.

WHEREFORE, the Trustee respectfully prays this Honorable Court (i) avoid the August 2022 Agreement, as well as all payments made thereunder, pursuant to the allowances of Section 548(a)(1)(B) of Title 11 of the United States Code; (ii) enter judgment in favor of the Trustee, and against the Defendant, in the sum of $202,933.00; and (iii) afford such other and further relief as may be just and proper.

### Count VI: Fraudulent Conveyance – October 2022 Agreement
### (DC Code § 28-3105)

55. The Trustee repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

56. The Debtor had financial liabilities that exceeded the Debtor's assets, on October 21, 2022, and was accordingly insolvent at the time the October 2022 Agreement was entered into.

57. The Debtor became further insolvent as a result of entering into the October 2022 Agreement.

58. The Debtor was justly indebted to Industrial on October 21, 2022 and has remained justly indebted to Industrial at all times since (including on December 15, 2023, when the Debtor petitioned for chapter 7 relief).

59. Assuming, *arguendo*, the October 2022 Agreement was a *bona fide* sales agreement, the receipt of $1,200,000.00 (less $12,000.00 in due diligence fees and $637,067.00 used to retire the Debtor's avoidable obligation under the August 2022 Agreement), in exchange for the sale of $1,680,000.00 in future receivables, was made for markedly less than reasonably equivalent value.

60. Between October 21, 2022 and May 8, 2022, the Debtor paid the Defendant $793,875.00 pursuant to the October 2022 Agreement.

WHEREFORE, the Trustee respectfully prays this Honorable Court (i) avoid the October 2022 Agreement, as well as all payments made thereunder, pursuant to the allowances of Section 548(a)(1)(B) of Title 11 of the United States Code; (ii) enter judgment in favor of the Trustee, and against the Defendant, in the sum of $793,875.00; and (iii) afford such other and further relief as may be just and proper.

### Count VII: Fraudulent Conveyance – February 2022 Agreement
### (11 U.S.C. § 548)

61. The Trustee repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

62. In the alternative, if the February 2022 Agreement did not represent a sale of future receivables, the February 2022 Agreement was a loan agreement governed by the laws of the State of New York.

63. Pursuant to Section 190.40 of the New York Penal Code, the criminal usury rate, in the State of New York is—and, at all times relevant, has been—25% per annum.

64. The interest rate under the February 2022 Agreement is 125.76% per annum.

65. As a usurious loan agreement, the February 2022 Agreement is unenforceable and a nullity.

66. The Debtor thusly made $42,954.00 in payments pursuant to an unenforceable loan agreement that is a nullity.

67. The Debtor did not receive reasonably equivalent value for the subject payments, insofar as they were made pursuant to an agreement that is a nullity.

68. The Debtor had financial liabilities that exceeded the Debtor's assets, on February 5, 2022, and was accordingly insolvent at the time the February 2022 Agreement was entered into.

69. The Debtor became further insolvent as a result of entering into the February 2022 Agreement.

WHEREFORE, the Trustee respectfully prays this Honorable Court (i) avoid the February 2022 Agreement, as well as all payments made thereunder, pursuant to the allowances of Section 548(a)(1)(B) of Title 11 of the United States Code; (ii) enter judgment in favor of the Trustee, and against the Defendant, in the sum of $42,954.00; and (iii) afford such other and further relief as may be just and proper.

### Count VIII: Fraudulent Conveyance – August 2022 Agreement
### (11 U.S.C. § 548)

70. The Trustee repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

71. In the alternative, if the August 2022 Agreement did not represent a sale of future receivables, the August 2022 Agreement was a loan agreement governed by the laws of the State of New York.

72. Pursuant to Section 190.40 of the New York Penal Code, the criminal usury rate, in the State of New York is—and, at all times relevant, has been—25% per annum.

73. The interest rate under the August 2022 Agreement is 94.81% per annum.

74. As a usurious loan agreement, the August 2022 Agreement is unenforceable and a nullity.

75. The Debtor thusly made $202,933.00 in payments pursuant to an unenforceable loan agreement that is a nullity.

76. The Debtor did not receive reasonably equivalent value for the subject payments, insofar as they were made pursuant to an agreement that is a nullity.

77. The Debtor had financial liabilities that exceeded the Debtor's assets, on August 30, 2022, and was accordingly insolvent at the time the August 2022 Agreement was entered into.

78. The Debtor became further insolvent as a result of entering into the August 2022 Agreement.

WHEREFORE, the Trustee respectfully prays this Honorable Court (i) avoid the August 2022 Agreement, as well as all payments made thereunder, pursuant to the allowances of Section 548(a)(1)(B) of Title 11 of the United States Code; (ii) enter judgment in favor of the Trustee, and against the Defendant, in the sum of $202,933.00; and (iii) afford such other and further relief as may be just and proper.

### Count IX: Fraudulent Conveyance – October 2022 Agreement
### (11 U.S.C. § 548)

79. The Trustee repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

80. In the alternative, if the October 2022 Agreement did not represent a sale of future receivables, the October 2022 Agreement was a loan agreement governed by the laws of the State of New York.

81. Pursuant to Section 190.40 of the New York Penal Code, the criminal usury rate, in the State of New York is—and, at all times relevant, has been—25% per annum.

82. The interest rate under the October 2022 Agreement is 94.81% per annum.

83. As a usurious loan agreement, the October 2022 Agreement is unenforceable and a nullity.

84. The Debtor thusly made $793,875.00 in payments pursuant to an unenforceable loan agreement that is a nullity.

85. The Debtor did not receive reasonably equivalent value for the subject payments, insofar as they were made pursuant to an agreement that is a nullity.

86. The Debtor had financial liabilities that exceeded the Debtor's assets, on October 21, 2022, and was accordingly insolvent at the time the October 2022 Agreement was entered into.

87. The Debtor became further insolvent as a result of entering into the October 2022 Agreement.

WHEREFORE, the Trustee respectfully prays this Honorable Court (i) avoid the October 2022 Agreement, as well as all payments made thereunder, pursuant to the allowances of Section 548(a)(1)(B) of Title 11 of the United States Code; (ii) enter judgment in favor of the Trustee, and against the Defendant, in the sum of $793,875.00; and (iii) afford such other and further relief as may be just and proper.

## Count X – Conversion
### (District of Columbia Common Law)

88. The Trustee repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

89. On or about May 31, 2017, Industrial filed a uniform commercial code financing statement (a "UCC Financing Statement"), against the Debtor, amongst the land records of the District of Columbia, asserting a lien over, *inter alia*, "All assets of Debtor wherever located, whether now owned or hereafter existing or hereafter acquired arising, together with all proceeds thereof. . ."

90. Each and every payment collected by the Defendant, under the February 2022 Agreement, the August 2022 Agreement, and the October 2022 Agreement—saving and excepting two payments, of $6,000.00 each, made in May 2025—were debited by the Defendant, from the bank account of the Defendant.

91. If the aforesaid agreements were loans, each was unlawful in nature, being in contravention of the criminal usury laws of the State of New York.

92. By directly debiting monies from the Debtor's bank account, the Defendant exercised dominion and control over said account.

93. The funds within the Defendant's bank account, at the time of each of the foregoing payments being made, constituted the lawful collateral of Industrial.

94. The taking of Industrial's collateral constituted a denial of Industrial's rights over the same collateral.

WHEREFORE, the Trustee respectfully prays this Honorable Court (i) enter judgment against the Defendant, and in favor of the Trustee, in the sum of $1,027,762.00; and (ii) afford such other and further relief as may be just and proper.

## Count XI – Unjust Enrichment
### (District of Columbia Common Law)

95. The Trustee repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

96. The Debtor paid $1,039,762.00 pursuant to the February 2022 Agreement, the August 2022 Agreement, and the October 2022 Agreement, with such payments constituting a legal benefit to the Defendant.

97. The Defendant has retained the foregoing benefit, continuing to hold the monies paid over by the Debtor.

98. It is inequitable for the Defendant to retain payments made pursuant to a series of agreements that provide for the Defendant to receive a return on investment—regardless of whether or not characterized as loans—at a rate of well in excess of 94% per annum.

99. Specifically, the three agreements are either usurious loans that are nullities pursuant to their own choice of law provision or, alternatively, are so facially unconscionable as to offend notions of equity.

WHEREFORE, the Trustee respectfully prays this Honorable Court (i) enter judgment against the Defendant, and in favor of the Trustee, in the sum of $1,039,762.00; and (ii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

                Respectfully submitted,

Dated: December 14, 2025      By: <u>/s/ Maurice B. VerStandig</u>
                Maurice B. VerStandig, Esq.
                Bar No. MD18071
                The VerStandig Law Firm, LLC
                9812 Falls Road, #114-160
                Potomac, Maryland 20854
                Phone: (301) 444-4600
                Facsimile: (301) 444-4600
                mac@mbvesq.com
                *Special Counsel to Wendell Webster*
                *In His Official Capacity as*
                *Chapter 7 Trustee*