Maurice VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
(301) 444-4600
mac@mbvesq.com
*Special Counsel for Wendell Webster in*
*His Official Capacity as Chapter 7 Trustee*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 23-378-ELG |
| | ) | |
| BROUGHTON CONSTRUCTION CO., LLC | ) ) | (Chapter 7) |
| | ) | |
| Debtor. | ) ) | |
| | ) | |
| WENDELL WEBSTER, in his official capacity as chapter 7 trustee and as assignee of Industrial Bank and Nationwide Mutual Insurance Company | ) ) ) ) ) | Adv. Case No. _____ |
| | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| CFG MERCHANT SOLUTIONS, LLC | ) ) | |
| Defendant. | ) ) ) | |

## **COMPLAINT**

Comes now Wendell Webster in his official capacity as chapter 7 trustee (the "Trustee") of the estate of Broughton Construction Co., LLC ("Broughton" or the "Debtor"), inclusive of his standing as assignee of Industrial Bank ("Industrial") and Nationwide Mutual Insurance Company ("Nationwide") pursuant to that certain agreement of November 10, 2025, by and through undersigned special counsel, pursuant to Federal Rule of Bankruptcy Procedure 7003 and Federal

1

Rule of Civil Procedure 3, and as and for his complaint against CFG Merchant Solutions, LLC ("CFG" or the "Defendant") states as follows:

## Introduction

1. In the three years immediately preceding the filing of a petition for bankruptcy relief, the Debtor paid $3,326,945.00 to the Defendant, pursuant to a series of merchant cash advance ("MCA") transactions.

2. The MCA transactions are each titularly sales of future receivables, in exchange for upfront cash.

3. If the MCA transactions are, in fact, actual sales of future receivables, each such transaction (and every payment made thereupon) is a constructively fraudulent conveyance, being a sale made at the time the Debtor was insolvent, with Broughton receiving well less than reasonably equivalent value for the receivables putatively sold.

4. If the MCA transactions are not, in fact, actual sales of future receivables, each such transaction is a poorly-disguised usurious loan that, pursuant to New York law (which governs each transaction, per the Defendant's own agreement), is both criminal in nature and wholly invalid.

5. Under either eventuality, each payment made to the Defendant, by the Debtor, constitutes a fraudulent conveyance and is thusly avoidable under both Title 11 of the United States Code (the "Bankruptcy Code") and District of Columbia law.

6. The Trustee thusly now brings suit to avoid $3,326,945.00 in fraudulent conveyances, seeking a money judgment as against the Defendant in the same sum.

## Parties

7. The Trustee is the chapter 7 trustee overseeing administration of the Debtor's estate. Pursuant to an agreement of November 10, 2025, as approved by the United States Bankruptcy Court for the District of Columbia on December 8, 2025, the Trustee is also the assignee of certain causes of action held by Industrial and Nationwide, against CFG,

8. The Debtor is a limited liability company, formed pursuant to the laws of the District of Columbia on or about September 11, 2006, that filed a petition for chapter 7 relief, pursuant to Section 301 of the Bankruptcy Code, on or about December 15, 2023.

9. Square is a limited liability company, formed pursuant to the laws of the State of Delaware on or about May 18, 2015, carrying on the business of entering into MCA agreements.

## Jurisdiction and Venue

10. This Honorable Court enjoys jurisdiction over the instant proceeding pursuant to the allowances of Section 1334 of Title 28 of the United States Code, insofar as the causes of action set forth herein arise under Title 11 of the United States Code (the "Bankruptcy Code").

11. This Honorable Court further enjoys jurisdiction over the instant proceeding pursuant to the allowances of Section 1332 of Title 28 of the United States Code, insofar as this case is between citizens of different states and the amount in controversy exceeds Seventy Five Thousand Dollars and No Cents ($75,000.00).

12. Venue is properly laid in this Honorable Court pursuant to the allowances of Section 1409 of Title 28 of the United States Code insofar as the chapter 7 case of the Debtor is pending in this Honorable Court.

13. To whatever extent this case may be brought in the United States District Court for the District of Columbia, on account of there existing diversity jurisdiction *sub judice*, this case is

nonetheless properly referred to this Honorable Court pursuant to the allowances of DCt.LBR 5011-1(a).

## General Allegations

14. Over the course of approximately 20 months, the Debtor and the Defendant entered into at least five—and, upon information and belief, a total of six—purchase agreements (the "Purchase Agreements"), pursuant to which the Debtor sold percentages of future, undefined receivables to the Defendant in exchange for cash.

15. A margin of at least 35% separated the amount paid from the amount of receivables sold, in each instance, with the timelines for repayment under each Purchase Agreement resulting in projected annualized returns of near—if not more than—100% on monies disbursed.

16. By way of anecdote, a Purchase Agreement entered into in February 2022 provides for the sale of $700,000.00 in future receivables, in exchange for a payment of $500,000.00, with weekly payments of $39,000.00 to be made. This is a 40% markup that annualizes to a 173.81% return for CFG.

17. Each of the Purchase Agreements is governed by the laws of the State of New York.

18. In total, the Defendant disbursed at least $1.15 million to the Defendant (though the sum may be higher depending on how the disbursement of at least two of the at-issue transactions was handled).

19. The Debtor, in turn, remitted $3,326,945.00 to the Defendant during a span of just over two years.

## Count I: Fraudulent Conveyance
### (11 U.S.C. § 548)

20. The Trustee repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

21.  The Debtor had financial liabilities that exceeded the Debtor's assets, from January 1, 2021 forward, and was thusly insolvent at the time of entering into each agreement with the Defendant.

22.  The Debtor was without the ability to pay its debts, as they came due, at all times from January 1, 2021 forward.

23.  Assuming, *arguendo*, the Purchase Agreements are *bona fide* sales agreements, the sale of future receivables was always made for markedly less than reasonably equivalent value.

24.  Between January 8, 2021 and April 27, 2023, the Debtor paid the Defendant $3,326,945.00 pursuant to the Purchase Agreements.

WHEREFORE, the Trustee respectfully prays this Honorable Court (i) avoid the Purchase Agreements, as well as all payments made thereunder, pursuant to the allowances of Section 548(a)(1)(B) of Title 11 of the United States Code; (ii) enter judgment in favor of the Trustee, and against the Defendant, in the sum of $3,326,945.00; and (iii) afford such other and further relief as may be just and proper.

## Count II: Fraudulent Conveyance
### (11 U.S.C. § 544; DC Code § 28-3104)

25.  The Trustee repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

26.  Each Purchase Agreement caused the Debtor to have remaining assets that were unreasonably small in relation to the obligations incurred thereunder, with the cash furnished through each such agreement being insufficient to retire the obligations simultaneously incurred therewith.

27.  The Debtor was without the ability to pay its debts, as they came due, at all times from January 1, 2021 forward.

28. Each Purchase Agreement denoted the incursion of a debt beyond the Debtor's ability to pay, with payments on each such Purchase Agreement necessarily coming at the expense of the timely retirement of the Debtor's other monetary obligations.

29. Assuming, *arguendo*, the Purchase Agreements are *bona fide* sales agreements, the sale of future receivables was always made for markedly less than reasonably equivalent value.

30. Between January 8, 2021 and April 27, 2023, the Debtor paid the Defendant $3,326,945.00 pursuant to the Purchase Agreements.

WHEREFORE, the Trustee respectfully prays this Honorable Court (i) avoid the Purchase Agreements, as well as all payments made thereunder, pursuant to the allowances of Section 548(a)(1)(B) of Title 11 of the United States Code; (ii) enter judgment in favor of the Trustee, and against the Defendant, in the sum of $3,326,945.00; and (iii) afford such other and further relief as may be just and proper.

### Count III: Fraudulent Conveyance
### (11 U.S.C. § 544; DC Code § 28-3105)

31. The Trustee repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

32. The Debtor had financial liabilities that exceeded the Debtor's assets, from January 1, 2021 forward, and was thusly insolvent at the time of entering into each agreement with the Defendant.

33. The Debtor was without the ability to pay its debts, as they came due, at all times from January 1, 2021 forward.

34. Assuming, *arguendo*, the Purchase Agreements are *bona fide* sales agreements, the sale of future receivables was always made for markedly less than reasonably equivalent value.

35. The Debtor was justly indebted to Industrial on January 1, 2021 and has remained justly indebted to Industrial at all times since (including on December 15, 2023, when the Debtor petitioned for chapter 7 relief).

36. Between January 8, 2021 and April 27, 2023, the Debtor paid the Defendant $3,326,945.00 pursuant to the Purchase Agreements.

WHEREFORE, the Trustee respectfully prays this Honorable Court (i) avoid the Purchase Agreements, as well as all payments made thereunder, pursuant to the allowances of Title 28 of the District of Columbia Code and Section 544 of the Bankruptcy Code; (ii) enter judgment in favor of the Trustee, and against the Defendant, in the sum of $3,326,945.00; and (iii) afford such other and further relief as may be just and proper.

## Count IV: Fraudulent Conveyance
## (11 U.S.C. § 548)

37. The Trustee repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

38. In the alternative, if the Purchase Agreements with the Defendant did not represent sales of future receivables, the agreements where each a loan agreement governed by the laws of the State of New York.

39. Pursuant to Section 190.40 of the New York Penal Code, the criminal usury rate, in the State of New York is—and, at all times relevant, has been—25% per annum.

40. The interest rate under each of the Purchase Agreements is well in excess of 25% per annum..

41. As usurious loan agreements, each of the foregoing agreements is unenforceable and a nullity.

42. The Debtor thusly made $3,326,945.00 in payments pursuant to unenforceable loan agreements that are nullities.

43. The Debtor did not receive reasonably equivalent value for the subject payments, insofar as they were made pursuant to agreements that are nullities.

44. The Debtor had financial liabilities that exceeded the Debtor's assets, from January 1, 2021 forward, and was accordingly insolvent at the time the foregoing agreements were entered into.

45. The Debtor became further insolvent as a result of entering into each of the foregoing agreements.

WHEREFORE, the Trustee respectfully prays this Honorable Court (i) avoid the Purchase Agreements, as well as all payments made thereunder, pursuant to the allowances of Section 548(a)(1)(B) of Title 11 of the United States Code; (ii) enter judgment in favor of the Trustee, and against the Defendant, in the sum of $3,326,945.00; and (iii) afford such other and further relief as may be just and proper.

### Count V – Conversion
### (District of Columbia Common Law)

46. The Trustee repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

47. On or about May 31, 2017, Industrial filed a uniform commercial code financing statement (a "UCC Financing Statement"), against the Debtor, amongst the land records of the District of Columbia, asserting a lien over, *inter alia*, "All assets of Debtor wherever located, whether now owned or hereafter existing or hereafter acquired arising, together with all proceeds thereof. . ."

48. Each and every payment collected by the Defendant, under the Purchase Agreements, was debited by the Defendant, from the bank account of the Defendant.

49. If the aforesaid agreements were loans, each was unlawful in nature, being in contravention of the criminal usury laws of the State of New York.

50. By directly debiting monies from the Debtor's bank account, the Defendant exercised dominion and control over said account.

51. The funds within the Defendant's bank account, at the time of each of the foregoing payments being made, constituted the lawful collateral of Industrial.

52. The taking of Industrial's collateral constituted a denial of Industrial's rights over the same collateral.

WHEREFORE, the Trustee respectfully prays this Honorable Court (i) enter judgment against the Defendant, and in favor of the Trustee, in the sum of $3,326,945.00; and (ii) afford such other and further relief as may be just and proper.

### Count VI – Unjust Enrichment
### (District of Columbia Common Law)

53. The Trustee repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

54. The Debtor paid $3,326,945.00 pursuant to the Purchase Agreements, with such payments constituting a legal benefit to the Defendant.

55. The Defendant has retained the foregoing benefits, continuing to hold the monies paid over by the Debtor.

56. It is inequitable for the Defendant to retain payments made pursuant to a series of agreements that provide for the Defendant to receive a return on investment—regardless of whether or not characterized as loans—at a rate of well in excess of 70%.

57. Specifically, the Purchase Agreements are either usurious loans that are nullities pursuant to their own choice of law provision or, alternatively, are so facially unconscionable as to offend notions of equity.

WHEREFORE, the Trustee respectfully prays this Honorable Court (i) enter judgment against the Defendant, and in favor of the Trustee, in the sum of $3,326,945.00; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: December 14, 2025

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Special Counsel to Wendell Webster
In His Official Capacity as
Chapter 7 Trustee*