Maurice VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
(301) 444-4600
mac@mbvesq.com
*Special Counsel for Wendell Webster in*
*His Official Capacity as Chapter 7 Trustee*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 23-378-ELG |
| | ) | |
| BROUGHTON CONSTRUCTION | ) | (Chapter 7) |
| CO., LLC | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

**MOTION TO APPROVE COMPROMISE WITH R13 COMMUNITY PARTNERS, LLC**

Comes now Wendell Webster (the "Trustee"), in his official capacity as chapter 7 trustee

of the bankruptcy estate (the "Estate") of Broughton Construction Co., LLC (the "Debtor"), by

and through undersigned special counsel, pursuant to Federal Rule of Bankruptcy Procedure 9019,

and moves to approve a compromise of claims held against R13 Community Partners LLC

("R13"), and in support thereof states as follows:

**I.      Introduction**

This motion stems from litigation in which the Trustee has asserted the Estate to hold an

interest in R13, and in which the Trustee has further posited any withdrawal of said interest to be

subject to avoidance. R13, in turn, has sought to dismiss correlative litigation, *see Webster v. R13*

*Community Partners LLC*, Case No. 25-10053-ELG (Bankr. D.D.C. 2025) (the "Adversary

Proceeding"), at DE #12 (the "Motion to Dismiss"), on the alternative theories that (i) the Debtor

1

never owned an interest in R13; (ii) the Trustee is barred from recovering by virtue of the doctrine of equitable estoppel; and (iii) the underlying complaint is not adequately pleaded.

Following a review of the Motion to Dismiss, good faith negotiations have ensued and the parties are happy to report a settlement agreement has been reached through which (a) monies will be brought into the Estate; (b) the Adversary Proceeding will be definitively resolved; and (c) the ongoing incursion of correlative professional fees—on both sides—will be abated. This is, at core, an agreement that meaningfully advances the administration of the Estate, that mitigates the palpable risks and uncertainties of litigation, and that allows all parties to otherwise focus their resources on more potentially prosperous endeavors.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the compromise be approved by this Honorable Court.

## II.     Background Facts

As more fully set forth in the adversary complaint*, see* Adversary Proceeding at DE #1 (the "Complaint"), the Trustee has alleged the Debtor to have entered into a memorandum of understanding (the "MOU"), with various third parties, in July 2022, through which a joint venture was created. The Complaint asserts R13 to have been the byproduct of the MOU, with the Debtor being afforded a 3% ownership interest therein in exchange for the payment of valuable consideration.

The Complaint further posits R13 to have been formed so as to respond to a request for proposal for lucrative development work in the District of Columbia, and that R13's ensuing bid was successfully accepted. However, the Trustee further alleges no operating agreement (or other comparable document) was thereafter executed and that, post-petition, the Debtor's principal caused the Debtor to withdraw from R13.

In turn, R13 has asserted, in the Motion to Dismiss, that the MOU is facially a non-binding document legally incapable of giving rise to a membership interest, rife with uncertain terms yet certain as to the non-binding nature thereof. R13 further urges the MOU to have never been fully executed and to thusly suffer from familiar legal deficiencies, whilst going on to additionally posit that the Complaint suffers various irreparable flaws correlative to the Debtor's principal also being a chapter 7 debtor whose individual estate is also under the Trustee's separate helm. The Motion to Dismiss additionally theorizes the Complaint to suffer from various pleading deficiencies.

## III.    Agreement Terms

In the interests of judicial economy, the parties have elected to not execute a separate, freestanding agreement but, rather, to fully set forth operative terms in this motion, with R13's acquiescence being evidenced by its counsel's consent to the filing of this motion. The terms of this agreement (the "Agreement") are as follows:

i.    Within fifteen (15) business days of the entry of an order granting this motion, R13 will convey—or cause to be conveyed—to the Trustee the sum of Ten Thousand Dollars and No Cents ($10,000.00), in the lawful currency of the United States (the "Settlement Sum"), via wire, certified funds, or a check drawn against a law firm's attorney trust account;

ii.    Within fifteen (15) business days of the receipt of the Settlement Sum, the Trustee and R13 will file a stipulation of dismissal of the Adversary Proceeding, with prejudice.

iii.    Upon the filing of the aforesaid stipulation of dismissal, the Trustee will have been deemed to have waived, released and demised any claims, known or unknown, whether sounding in law or equity, emanating from the beginning of time through the date of payment of the Settlement Sum, against R13, and R13, in turn, will be deemed to have waived, released and demised any claims, known or unknown, whether sounding in law or equity, emanating from the

3

beginning of time through the date of payment of the Settlement Sum, against (i) the Trustee; (ii) the Estate; and/or (iii) the Debtor. It is the express intent of the parties that this mutual release be regarded in the broadest terms permitted by controlling law but, equally, that this mutual release not be construed to relieve either party of its obligations to perform under this Agreement.

iv.      R13 does not admit any liability in the Adversary Proceeding and, to the contrary, enters into this Agreement so as to avoid the time, expense and stresses of litigation. This Agreement ought not be construed as an admission of liability.

v.      Time shall be of the essence in connection with all provisions of this Agreement, *except* a failure to timely file a stipulation of dismissal shall not be deemed a material breach of this Agreement.

vi.      This Agreement shall be binding upon the parties hereto, together with their successors and assigns; any withdrawal of the reference, from the United States District Court for the District of Columbia to the United States Bankruptcy Court for the District of Columbia, shall neither impair nor alter the enforceability of this Agreement.

vii.      The Agreement shall be governed by the laws of the United States (including title 11 of the United States Code) and the District of Columbia, with any dispute concerning the Agreement to be subject to the sole jurisdiction of the United States Bankruptcy Court for the District of Columbia or, should such court be without subject matter jurisdiction (and only if such court is without subject matter jurisdiction), then the Circuit Court for Fairfax County, Virginia (with the parties intentionally electing to invoke the jurisdiction of a neighboring state's trial court for reasons correlative to efficiency).

viii.      Both parties shall bear their own professional fees and expenses in connection with the Adversary Proceeding.

4

IV.   **Standard**

The Federal Rules of Bankruptcy Procedure specifically provide for the approval of compromises and settlements upon a motion and hearing:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

The United States District Court for the District of Columbia has previously set forth the criteria by which a motion under Federal Rule of Bankruptcy Procedure 9019 is to be evaluated:

> . . . a bankruptcy judge "need not hold a mini-trial or write an extensive opinion every time he approves or disapproves a settlement." While neither the Bankruptcy Code nor Bankruptcy Rule 9019 offers guidance as to the criteria a bankruptcy court applies in evaluating a proposed settlement, the parties generally agree that, following the principles of *TMT Trailer Ferry*, the bankruptcy court should consider: (1) probability of success in the litigation; (2) difficulties, if any, with collection; (3) the complexity of the litigation, including the expense, inconvenience and delay attendant to the litigation; and (4) the interest of creditors.

*Advantage Healthplan, Inc. v. Potter*, 391 B.R. 521, 554 (D. D.C. 2008), aff'd sub nom. *Greater Se. Cmty. Hosp. Found., Inc. v. Potter*, 586 F.3d 1 (D.C. Cir. 2009) (quoting *In re Fishell*, 47 F.3d 1168 (6th Cir.1995); citing *Southern Med. Arts Companies, Inc.*, 343 B.R. 250, 256 (10th Cir. BAP 2006); *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 425 (1968)).

V.   **Argument: The Agreement Merits Approval**

The Agreement promotes the best interests of the Estate, allows the Adversary Proceeding to be amicably resolved, and introduces valuable consideration that may be used to pay claims of creditors. Equally importantly, the Agreement mitigates against the risks of the Motion to Dismiss being granted or the underlying Adversary Proceeding otherwise resulting in a judgment favorable

to R13, whilst also sparing any concerns about collectability even if the Trustee were successful in obtaining a judgment adverse to R13. And the Agreement is thusly meritorious of approval.

Considering the first *Advantage Healthplan* element, likelihood of success on the merits is genuinely murky. The Complaint is premised, nearly *en toto*, on the MOU which, as discussed *supra*, contains express language suggesting the same to not be an enforceable instrument. While the Trustee may still pursue various theories concerning the formation of a limited liability company (or a joint venture that takes the form of such an entity), doing so is a notoriously difficult endeavor. Meanwhile, even if the Trustee succeeded in showing a legal interest to have been created, the Trustee would *still* need to then show that interest had not been validly withdrawn or abandoned—also a potentially perilous endeavor. Thusly, while the Trustee certainly believes the Complaint to have merit, and remains cautiously optimistic as to the likelihood of succeed in the Adversary Proceeding, he is nonetheless cognizant of the enormously risky nature of the litigation.

In consideration of the difficulties with collecting, the finances of R13 are largely unknown and have not formed a material portion of the Trustee's business judgment in entering into the Agreement. Collection is always a finicky and difficult task, however, and there is no reason to believe that, even if a Trustee-favorable judgment were entered, R13 would simply cut a check for the full sum thereof.

The third consideration is complexity of any ensuing litigation. While avoidance actions are not overly complex, and are well known to this Honorable Court, there would have been notable financial intricacies in this case. It is not merely that the Trustee would have needed to prove an ownership interest in R13; it is, too, that doing so would have required accounting for monies maintained to have never been tendered, the disposition of the contemplated subject funds, and the accounting of the general finances of R13. Moreover, by endeavoring to avoid the loss of

ownership in a functioning, extant entity, the Trustee would be compelled to assess the post-withdrawal affairs of R13, to attempt to quantify the value of equity therein both at the time of putative withdrawal and presently, and to furnish expert evidence in support of such quantification. Meanwhile, even if the Trustee were to succeed, there would still be the outside possibility judgment would come in the form of a return of the Estate's alleged interest in a presumptively-illiquid going concern and not, as hoped, a money judgment for a sum certain.

Finally, the Agreement is clearly consistent with the best interests of creditors. While not the largest financial sum to grace the docket of this Honorable Court, $10,000.00 does denote valuable consideration that will be largely used to pay the claims of creditors. By reaching an expedient and efficient resolution, the parties have largely guarded against the ongoing accrual of legal fees that would eat into the Settlement Sum in an outsized fashion. Pushing ahead with the Adversary Proceeding, by contrast, would not only take an undetermined quotient of time but, too, would cause the Estate to continue accruing legal fees in a case that, as discussed *passim*, would not even be assured of producing a meaningful financial recovery sufficient to offset those fees.

## VI. Conclusion

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) approve the Agreement; and (ii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

Respectfully submitted,

Dated: April 5, 2026

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Special Counsel to Wendell Webster*
*In His Official Capacity as*
*Chapter 7 Trustee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of April, 2026, a copy of the foregoing was served electronically upon filing via the ECF system. An accompanying notice of this motion is being served herewith and will be mailed, to all parties on the attached mailing matrix, on April 6, 2026.

/s/ Maurice B. VerStandig
Maurice B. VerStandig